```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/9
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
OLSEN L. KEY, JR.,                              :

                Plaintiff,          :   05 Civ. 10461 (SHS) (GWG)

    -v.-                                        :   REPORT AND
                                                    RECOMMENDATION
SERGEANT TOUSSAINT and OFFICER    :
MOSCOSO, et al.,
                                                :
                Defendants.
----------------------------------------------------------------X

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

    Olsen Leonard Key, Jr. brings this suit pro se under 42 U.S.C. § 1983 alleging that his First Amendment rights were violated by employees of the New York State Department of Correctional Services ("DOCS"). The defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the motion should be granted.

I.    BACKGROUND

    As an initial matter, we note that Key's papers suffer from a procedural defect. While the defendants submitted a statement pursuant to the Southern District of New York's Local Civil Rule 56.1, Key failed to submit a counterstatement as required by Local Civil Rule 56.1(b). The terms of that rule dictate that all the factual statements in a defendant's Rule 56.1 statement are deemed admitted where, as here, they are not controverted. See Local Civil Rule 56.1(c); accord Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003).

    The defendants argue that the facts alleged in their Rule 56.1 statement should therefore be deemed admitted. See Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed June 9, 2009 (Docket # 75) ("Def. Reply"), at 6-7. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply

with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Given that Key is proceeding pro se and made an effort to respond to the motion for summary judgment by submitting an affidavit, this Court exercises its discretion to excuse Key's failure to the extent that Key has provided admissible evidence controverting the facts in the defendants' Rule 56.1 statement. Because Key's Second Amended Complaint was made under penalty of perjury, we will also consider its contents in deciding this motion. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001) (plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), cert. denied, 536 U.S. 922 (2002). We will not consider, however, any letters or other papers that have not been sworn.

On this motion for summary judgment, we "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," Scott v. Harris, 550 U.S. 372, 378 (2007) (citation and internal quotation marks omitted) – in this case, Key.

A.  Factual Background

In August and September 2004, Key and other inmates complained to Superintendent Brian Fischer that Officer Manuel Moscoso and Sergeant Anthony Toussaint were "tampering" with inmates' personal property and mail. Second Amended Complaint, filed Nov. 16, 2007 (Docket # 43) ("2d Am. Compl."), at 3b;[1] Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment, filed May 5, 2009 (Docket # 74) ("Pl. Aff."), at ¶ 2a. In

---

[1] The Court has added page numbers to the Second Amended Complaint where needed.

2

September 2004, "Moscoso and Toussaint entered the C gallery of the Special Housing Unit [of the Sing Sing Correctional Facility ("Sing Sing")], stating, 'Who ever is writing letters to the Warden about their mail and property will pay the price.'" 2d Am. Compl. at 2, 3b.[2]

Key alleges that after being placed in the Special Housing Unit for fighting with another inmate, he viewed Moscoso log and store all of his personal and legal property in four storage bags on October 13, 2004, and was only allowed to keep a small number of papers and legal documents. Id. at 3a.[3] Five days later, on October 18, 2004, Toussaint came to his cell and "confiscated all personal and legal property without providing an Inmate Property Form (I-64)," and "failed to log, store, and provide personal and legal form (I-64) of property . . . as directed by policy and procedures of the Department of Corrections [sic]." Id. at 3b. Toussaint told Key at that time that Key was being transferred to a federal facility and was not allowed to bring any personal or legal property with him. Id.

A memorandum in Key's "guidance file" states that Key's legal materials were shipped to the federal facility – the Metropolitan Detention Center – on May 20, 2005 based on Key's request. See Memorandum from William A. Lee, Deputy Superintendent of Security to Brian Fischer, Superintendent (May 25, 2005) (annexed as Ex. B to Declaration of Jacqueline Mackey,

---

[2] In his deposition, Key testified that in fact only Sergeant Toussaint made this statement. Examination Before Trial of Olsen L. Key, Jr. (annexed as Ex. B to Declaration of Inna Reznik, filed Feb. 2, 2009 (Docket # 69) ("Reznik Decl.")), at 129-30 ("Key Dep.").

[3] Key alleges that there once existed a "property form dated October 13, 2004" but that years later this form was intentionally removed from Key's inmate file by the defendants to prevent Key from proving his case. See Pl. Aff. at ¶ 2b. The defendants assert that in the normal course of business such forms are only kept at facilities for one year. See Declaration of Jeff Deloatch (annexed as Ex. A to Pl Aff.) ("Deloatch Decl."), at ¶¶ 3-5. Key notes that his file contains property forms from other facilities that are older than one year. Pl. Aff. at ¶ 2b; Letter from V. Grover to Olsen Key (Oct. 21, 2008) (annexed as Ex. E to Pl. Aff.).

3

filed Sept. 8, 2009 (Docket # 81) ("Mackey Decl.")) ("May 25, 2005 Memorandum"); Mackey Decl. ¶ 6. Key alleges that this statement was false, but concedes he was shipped "20 something letters" of forwarded mail. Pl. Aff. ¶ 2b.

When Key returned to Sing Sing on August 27, 2007, prison staff could locate only three of four storage bags that had been logged, and thus he was missing some legal materials and items logged with Moscoso on October 13, 2004, and all the materials confiscated by Toussaint on October 18, 2004. 2d Am. Compl. at 3c. Key alleges that Moscoso and Toussaint "intentionally lost transcripts and documents in retaliation for filing complaints and grievance of officers['] actions and missing legal letters." Id. at 3b. He states that the following items were missing:

    1. New and unused headphones received in facility on August 4, 2004.
    2. Legal papers and transcripts relating to state appeal.
    3. Plea and sentencing transcripts of prior convictions.
    4. U.S. Postal receipts (PS-3800-PS-3811) needed as evidence in civil case (04-cv-3505).
    5. State issued clothing.
    6. Permits for headphones and fan.
    7. Legal and personal letters, and family photos.

Id. at 3c. Key alleges that he "filed a claim for the missing items" on August 27, 2007, and that he "filed an institutional claim requesting replacement of legal materials needed for state appeal" on August 30, 2007. Id. His headphones were replaced, but "the Inmate Claims Officer (W. Small) . . . refused to place an order or request for replacement of transcripts." Id.

    B.    Procedural History

Key's original complaint was dismissed for failure to state a claim, with Key given leave to file an amended complaint stating a retaliation claim. Key v. Fischer, 2007 WL 2522352 (S.D.N.Y. Sept. 6, 2007), adopted by Order, filed Sept. 28, 2007 (Docket # 37). Key

4

subsequently filed the Second Amended Complaint, which the defendants moved to dismiss for failure to exhaust. See Notice of Motion to Dismiss Second Amended Complaint, filed Jan. 17, 2008 (Docket # 46). This motion was denied. Key v. Fischer, 2008 WL 2653840 (S.D.N.Y. July 07, 2008) ("Key I"), adopted by Order, filed July 25, 2008 (Docket # 58).

On February 2, 2009, the defendants filed the instant motion for summary judgment.[4] On May 5, 2009, Key submitted an affidavit and brief opposing the motion. See Pl. Aff.; Plaintiff's Response to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (annexed to Pl. Aff.) ("Pl. Mem.").[5] The defendants submitted reply papers. See Def. Reply.

## II. LAW GOVERNING SUMMARY JUDGMENT MOTIONS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[4] See Notice of Motion for Summary Judgment, filed Feb. 2, 2009 (Docket # 68); Notice to Pro Se Litigant Opposing Motion for Summary Judgment Pursuant to Local Rule 56.2, filed Feb. 2, 2009 (Docket # 66); Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed Feb. 2, 2009 (Docket # 67) ("Def. Mem."); Statement of Undisputed Material Facts Pursuant to Rule 56.1, filed Feb. 2, 2009 (Docket # 65); Mackey Decl.; Deloatch Decl.; Declaration of Frank Robinson, filed Sept. 8, 2009 (Docket # 79); Declaration of Karen Bellamy, filed Sept. 8, 2009 (Docket # 78); Reznik Decl.

[5] Key also mailed a letter dated June 10, 2009 to the Court largely repeating arguments already made in Key's initial opposition papers, as well as requesting a hearing. See Letter from Olsen Key to Hon. Gabriel W. Gorenstein, United States Magistrate Judge (June 10, 2009), filed Sept. 8, 2009 (Docket # 77). Because the letter is unsworn, we do not rely on it in adjudicating the summary judgment motion.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the court must draw all "justifiable" or "legitimate" inferences in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nonetheless, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citation and internal quotation marks omitted). "[S]peculation alone is insufficient to defeat a motion for summary judgment." McPherson v. New York City Dept. of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006).

III.   DISCUSSION

   A.   Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of . . . administrative remedies through the highest level for each claim is required." Veloz v. New York, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004), aff'd, 178 F. App'x 39 (2d Cir. 2006); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'") (citations omitted). In addition, the exhaustion must be "[p]roper" – that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S.

6

81, 90-91 (2006). Further, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

In New York, exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program. See N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee. Id. § 701.5(a)-(b). After receiving a response, the inmate must, if he disagrees with the decision, appeal to the superintendent of the facility. Id. § 701.5(c). After receiving a response from the superintendent, the prisoner must seek any review of the superintendent's decision with the central office review committee ("the CORC"). Id. § 701.5(d); see also Hemphill v. New York, 380 F.3d 680, 682 (2d Cir. 2004). "[A] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Varela v. Demmon, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007) (citations and internal punctuation omitted).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, see Jones v. Bock, 549 U.S. 199, 215 (2007), and thus the defendants have the burden of proving that Key's retaliation claim has not been exhausted, see, e.g., Land v. Kaufman, 2009 WL 1106780, at *5 (S.D.N.Y. Apr. 23, 2009); Brown v. Austin, 2009 WL 613316, at *5 (S.D.N.Y. Mar. 4, 2009).

The defendants argue that Key failed to exhaust his retaliation claim, pointing to evidence that he did not appeal any grievances alleging retaliation by Toussaint and Moscoso to the CORC. Def. Mem. at 14-16. In support of this argument, they have submitted a document listing all appeals heard and decided by the CORC since 1990 to establish that Key never

instituted an appeal regarding the alleged retaliation. See Bellamy Decl., Ex. A.

Key does not dispute that he did not submit an appeal on this topic. Indeed, he appears to concede that he has never filed a grievance regarding retaliation at all. Instead, Key argues that the "[g]rievance process required by the [PLRA] was not available to Plaintiff while confined in a federal detention center (Metropolitan Detention Center) during grievance process." Pl. Aff. ¶ 3. In the affidavit submitted in response to the defendants' initial motion to dismiss on exhaustion grounds, Key had noted that the Metropolitan Detention Center, "does not provided [sic] access to state case law, state legal materials and access to file grievances relating to incidents in state facilities." Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgement [sic], filed Feb. 29, 2008 (Docket # 51), at ¶ 1. Thus, Key argues that his failure to file a grievance regarding retaliation should be excused because the grievance process "was not available." Pl. Mem. at 9.

As was noted in this Court's prior opinion, Key I, 2008 WL 2653840, at *6, when a plaintiff advances a plausible explanation for his failure to exhaust, a court engages in a three-part analysis:

> First, the court must ask: "whether administrative remedies were in fact 'available' to the prisoner. [Second], [t]he court should also inquire . . . whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [Third], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

Brownell v. Krom, 446 F.3d 305, 311-12 (2d Cir. 2006) (quoting Hemphill, 380 F.3d at 686) (emphasis and alterations in original).

8

In this Court's prior decision on exhaustion, the Court rejected the defendants' effort to dismiss Key's claim on the ground that it was not clear whether there were remedies "available" to Key while in federal custody and noting that it was "certainly plausible that, in the absence of instructions, a prisoner in a federal facility might not have access to any information as to what steps he should take to exhaust." Key I, 2008 WL 2653840, at *6. The defendants have offered no new relevant evidence on this point. Instead, they cite to several cases for the proposition that "an inmate's transfer to a new facility does not excuse him from pursuing a grievance to a final administrative resolution." Def. Mem. at 13. However, these cases all involve the situation of a state inmate being transferred from one state facility to another state facility. See Carini v. Austin, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008); Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y. 2000); Finger v. Superintendent McFinnis, 2004 WL 1367506, at *1 (S.D.N.Y. June 16, 2004). But because the grievance process is governed by a single set of regulations applicable to all state correctional facilities, an inmate has the means to follow the process regardless of which state facility houses him. Indeed, the regulations require that an inmate exhaust remedies through means that are only available at a state facility. Thus, all complaints and appeals must be submitted to "the grievance clerk." 7 N.Y.C.R.R. § 701.5(a)(1), (c)(1), (d)(1)(i). In addition, some steps require that a particular form be used. Id. § 701.5(c)(1) (appeal to the CORC must be on "form #2133"). As a result, a transfer to a federal facility necessarily renders an inmate unable to comply with the state grievance process, at least at the initial filing step. See Bradley v. Washington, 441 F. Supp. 2d 97, 102-03 (D.D.C. 2006) (denying motion to dismiss for failure to exhaust administrative remedies where transfer to federal custody made administrative review of claims based on incidents in the District of Columbia jail "unavailable").

9

The defendants also cite to a case that involved a transfer from city to state facilities where the prisoner-plaintiff had "ample time to pursue his administrative remedies" before being transferred from a city jail to a state prison. Berry v. City of New York, 2002 WL 31045943, at *6-7 (S.D.N.Y. June 11, 2002). Key had no similar opportunity, however. While the taking of Key's property occurred before Key was transferred to the federal prison, nothing in the record suggests that Key was aware of the alleged loss of his property until after the transfer. Indeed, the only evidence in the record on this point is that Key was informed in July 2005, while Key was in federal custody, that no legal documents belonging to him could be located. See Letter from A. Tanoury to Olsen Key (July 27, 2005) (annexed as Ex. A to 2d Am. Compl.).

Nor is it relevant for purposes of showing that the state grievance process was "available" to Key that (1) Key had writing materials available to him; (2) that unspecified "legal materials" were forwarded to him; or (3) that Key had filed grievances in the past while he was in state prison. Def. Reply at 2-3; Def. Mem. at 15-16. The defendants do not explain how Key could have submitted a grievance to a state "grievance clerk" while he was located in a federal facility.

In sum, nothing in the defendants' submission suggests that the state prison grievance process was "available" to Key while he was in federal custody. Accordingly, Key should be excused from exhausting his grievance. Nonetheless, as described in the next section, the claim should be dismissed on the merits.

    B.    Retaliation Claim

A prisoner asserting a First Amendment retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted); accord Espinal v. Goord,

10

558 F.3d 119, 128 (2d Cir. 2009). The protected conduct must be "a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

In the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)). Accordingly, it has required courts to "examine prisoners' claims of retaliation with skepticism and particular care." Id. Thus, the plaintiff bears a "heightened burden of proof." Green v. Phillips, 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006); accord Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("In recognition of the reality that 'retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial.'") (citation omitted).

Other than a conclusory statement that suggests his rights were violated, Key does not respond to the defendants' argument that he cannot meet his burden of proof to show retaliation. Nor is there sufficient evidence in the record to make a prima facie case of retaliation. The central problem with Key's evidence is his failure to provide admissible evidence that Moscoso and Toussaint actually took an adverse action against him.

To prevail on a retaliation Key must show both (1) that Moscoso and Toussaint "intentionally" or "deliberately" lost or destroyed his property, e.g., Gill v. Frawley, 2006 WL 1742738, at *5 & nn.25-26 (N.D.N.Y. June 22, 2006), and (2) that they were "personally involved" in doing so, e.g., Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("it is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983") (internal quotation marks and citation omitted). In light of the Second Circuit's admonition that retaliation claims must be examined with skepticism and great care, the evidence in this case is not sufficient to allow a reasonable jury to find that Moscoso and Toussaint intentionally lost or destroyed Key's property. While the evidence shows that Moscoso and Toussaint took possession of Key's property, this does not by itself constitute an adverse action inasmuch as there were reasons to take Key's property due to his imminent transfer to the federal facility. Thus, the only adverse action against Key is the loss of his property – not its initial taking.

But there is no evidence whatsoever as to what happened to Key's property after Moscoso and Toussaint took it. There is no evidence that Moscoso and Toussaint were the exclusive custodians of the property after they took possession of it. Indeed, the evidence suggests precisely the opposite. A document from May 25, 2005 reflects that some of Key's legal materials were shipped to Key at his next prison at Key's request by a different prison official, identified as "William A. Lee.". See May 25, 2005 Memorandum. Another document reflects that still another prison official wrote Key in July indicating that he had done a search for legal materials belonging to Key and had been unable to locate them. See Letter from A. Tanoury to Olsen Key (July 27, 2005) (annexed as Ex. A to 2d Am. Compl.) The mechanism for storing Key's property and its chain of custody is simply unknown. Key's property thus might have been lost at any number of points.

Moreover, Key concedes that three bags of property were actually returned to him when he came back from federal custody. 2d Am. Compl. at 3c. The return of a portion of his property further suggests that there was no intentional act on any particular person's part to lose or destroy his property.

In the end, the only evidence of Moscoso and Toussaint's personal involvement and intent – beyond the loss itself – is the alleged prior statement by Toussaint that whoever was making complaints about their mail would "pay the price." See 2d Am. Compl. at 3b; Key Dep. at 129-30. But this vague threat, when considered in combination with the other speculative evidence as to the true cause of the loss of Key's property, is insufficient to show that Moscoso and Toussaint were personally involved in destroying or losing Key's property.

In sum, summary judgment should be granted as there is insufficient evidence to allow a reasonable jury to conclude that Moscoso and Toussaint retaliated against Key.

Conclusion

The defendants' motion for summary judgment (Docket # 68) should be granted.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Sidney H. Stein, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Stein. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: September 10, 2009

    New York, New York

_____<br>
GABRIEL W. GORENSTEIN<br>
United States Magistrate Judge

Copies sent to:

Olsen Leonard Key, Jr.
CC#09007577
Nassau County Correctional Center
100 Carman Avenue
East Meadow, NY 11554-1146

Inna Reznik
Assistant Attorney General
120 Broadway, 24th floor
New York, NY 10271